### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

     vs.                                No. CR 07-1244 WJ

DONALD SCOTT TAYLOR and
WILLIAM J. WATSON,

     Defendants.

### MEMORANDUM OPINION AND ORDER
### DENYING MOTION FOR DISCOVERY OF RACIALLY DISPROPORTIONATE
### CAPITAL PROSECUTION AUTHORIZATION

THIS MATTER comes before the Court upon Defendant Taylor's Motion for Discovery of Racially Disproportionate Capital Prosecution Authorization, filed February 16, 2009 **(Doc. 161)**. Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied on the grounds that Defendant has not made the required showing under *United States v. Armstrong*, 517 U.S. 456, 465 (1996) for such discovery, and because correspondence and other material relevant to the Government's decision to seek the death penalty in this case constitutes privileged deliberative process and attorney work product material.

### Background

Defendant seeks discovery regarding the from the Government regarding its decision to seek the death penalty in this case, as well as all information within the last ten years relating to the authorization process for cases subject to the federal death penalty based on the race of the victim, including any correspondence from the Government regarding race neutral capital case

policies.[1] His objective is to obtain discovery which will provide a basis for a motion for selective prosecution.

Mr. Taylor contends that race has "infected" the administration of the Federal Death Penalty Act ("FDPA") on the basis that individuals who kill white victims are disproportionately authorized for capital prosecution. In support, he attaches Kevin McNally's Declaration which offers data to show that more death sentences are imposed where the victim is white. The Government opposes the motion on the basis of privileged deliberative process and work product.

## Discussion

## I.       Defendant Has Failed to Meet His Burden to Obtain Discovery

A.       Legal Standard

A defendant bears a "demanding" burden in proving that he was selected for prosecution based on an unjustifiable standard. *See Armstrong*, 517 U.S. at 463. "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Id.* at 465. The defendant must demonstrate that the prosecutorial policy (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. *Id.* (quoting *Wayte*, 470 U.S. at 608). To establish a discriminatory effect, the

---

[1] Defendant specifically requests production of (1) all correspondence from the Government regarding its decision to seek the death penalty against Mr. Taylor; (2) information regarding all cases submitted to the Department of Justice's Capital Case Review Committee within the last ten years (including a description of the race of each victim in each case); (3) a list of all cases presented to the Capital Case Review Committee within the last ten years which resulted in [sic] decision to authorize the death penalty (including a description of the race of each victim in each case); (4) all standards, policies, practices, or criteria used by the Government to guard against racial discrimination or other arbitrary factors in authorizing a federal capital case; and (5) any correspondence from the Government within the last ten years regarding racial disparities in capital case policies.

Case 2:07-cr-01244-WJ   Document 203   Filed 03/26/09   Page 3 of 10

defendant must show that similarly situated individuals outside of the constitutionally protected class were not prosecuted.  *See id.*; *Hastings*, 126 F.3d at 315.

The same justifications supporting the "rigorous standard" to prove a selective prosecution claim also require a correspondingly "rigorous standard" to obtain discovery in aid of such a claim.  *Armstrong*, 517 U.S. at 468.  The threshold showing for discovery is intended to be "a significant barrier to the litigation of insubstantial claims."  *Id.* at 463-64.  A defendant must demonstrate "some evidence" tending to show both discriminatory effect and discriminatory intent.  *Id.* at 468-69; *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001).  To show discriminatory effect, the defendant must make a "credible showing" that similarly situated defendants of other classes could have been prosecuted but were not.  *See Armstrong*, 517 U.S. at 469-70.  Defendants are similarly situated "when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them."  *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir.1997). *Hastings*, 126 F.3d at 315 (quoting *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)).  A court must examine all factors relevant to the government's decision to prosecute in determining whether persons are similarly situated.  *Id.*  A defendant may meet the "credible showing" requirement "by identifying a similarly-situated individual or through the use of statistical evidence."  *James*, 257 F.3d at 1179.  Discriminatory intent can be established by either direct or circumstantial evidence.  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006).

"[A] defendant cannot satisfy the discriminatory effect prong by providing statistical evidence which simply shows that the challenged government action tends to affect one particular group.  Rather, the proffered statistics must address the critical issue of whether that

particular group was treated differently than a similarly-situated group." *James*, 257 F.3d at

1179.  To satisfy the prong, the study needs to identify similarly situated persons who could have

been prosecuted for the same offenses, but were not.  *Id.*

        B.      <u>Analysis</u>

        In this case, meeting the standard set forth in *Armstrong* requires that Defendant must be

able to point to instances where members of national criminal organizations were hired to kill a

non-white victim in exchange for narcotics, firearms, or narcotic components, that would further

the criminal enterprise –  and did not receive the death penalty without any proper justification.

Defendant fails to meet either of the two *Armstrong* prongs.  He fails to meet the first prong –

showing that the Government's prosecutorial policy had a discriminatory effect – because the

evidence Defendant offers is insufficient to show that similarly situated individuals outside of

the constitutionally protected class were not prosecuted.  Since Defendant must meet both

*Armstrong* prongs, his motion for discovery must be denied.[2]

        Defendant offers Mr. Mcnally's Declaration and attached statistical summaries as

evidence to support his request for discovery.  However, general statistics, without more, are

insufficient to satisfy the discriminatory intent element. *See McCleskey v. Kemp*, 481 U.S. 279,

292 (1987) (mere statistics, as presented here, are insufficient to satisfy the threshold

requirements of the discriminatory intent element of defendant's equal protection claim); *see*

*also U.S. v. Feliciano*, 998 F.Supp. 166, 173-74 (D.Conn.1998) (denying defendants' request for

---

     [2]  Defendant has not presented any evidence which could even suggest a discriminatory
intent or purpose.  *See, e.g., U.S. v. Holloway*, 29 F.Supp.2d 435, 442 (M.D.Tenn.,1998) (where
defendant did not produce any evidence tending to show the existence of discriminatory intent,
his motion for discovery of information disclosing racial discrimination in the decision by DOJ
selecting him to face the death penalty was denied).

discovery of information from the government tending to show that minorities are unfairly singled out for the death penalty where the information was allegedly to be used as mitigation evidence but the defendants were really seeking evidence of selective prosecution and did not meet "their initial burden of establishing entitlement to this information under Armstrong").

The only other "evidence" presented by Mr. Taylor besides the general statistics in Mr. McNally's Declaration is Defendant's assessment of death penalty cases in the District of New Mexico. Defendant conveniently chooses a narrow and unrepresentative three-year window of time to argue that the only two cases to be authorized for the death penalty in this District have involved a white victim. While the Government notes that this is an accurate statement, the Government correctly contends that this statement can hardly be said to constitute evidence sufficient to obtain the discovery sought by Defendant.

Widening the time frame alters the picture substantially regarding the statistical data on death penalty cases in New Mexico. The Government notes that in 1995, the United States Attorney's Office for the District of New Mexico filed a Notice of Intent to Seek the Death Penalty in a case involving four murder victims, one of whom was Hispanic.[3] In 1996, the United States Attorney's Office for the District of New Mexico filed a Notice of Intent to Seek the Death Penalty in a case involving six murder victims, none of whom were white.[4] In 2002, the United States Attorney's Office for the District of New Mexico filed a Notice of Intent to Seek the Death Penalty in a case where there were three murder victims, all whom were

---

[3] *United States v. Haworth*, CR 95-491 LH.

[4] *United States v. Mazzini,* CR 95-538 MV.

Hispanic.[5]  In that case, evidence of six other murders were to be presented at sentencing, and of those six victims, four were Hispanic and two were white.  Thus, Mr. Taylor cannot meet his burden under *Armstrong* by relying on statistics relating to death penalty cases in the state of New Mexico.

In sum, Defendant has failed to make the required credible showing that similarly situated defendants of other classes could have been prosecuted but were not.  In *U.S. v. Bass*, 536 U.S. 862, 863 (2002), defendant's request for discovery of information relating to the Government's capital charging practices was denied because he failed to submit relevant evidence that similarly situated persons were treated differently.  Mr. Taylor has likewise failed to make this showing.  The broad statistical analysis offered by Mr. McNally is insufficient to meet Defendant's burden under both  *Armstrong* and *Bass*.  Therefore, Defendant's request for discovery on the Government's initial recommendation and supporting documentation for the death penalty in this case and for similar information for other cases within the past ten years, is denied on this basis.

## II.    Information Defendant Seeks is Protected by Privilege

Defendant's motion would be denied on another basis as well.  Decisions to seek the death penalty within the federal system are made pursuant to the so-called "Death Penalty Protocol," which was promulgated by Department of Justice ("DOJ") shortly after enactment of the Federal Death Penalty Act (FDPA) and now appears in Title 9, Section 10, of the U.S. Attorneys' Manual (USAM).  The USAM outlines the internal policies and procedures for prosecution of all federal capital cases. *See United States v. Fernandez*, 231 F.3d 1240, 1243 (9th

---

[5]    *United States v. Alvarado*, CR 01-1709 MV.

Cir. 2000) (citing USAM § 9-10.000 *et seq.* (1997)).

The USAM requires the United States Attorney to submit a death penalty evaluation form and a prosecution memorandum to the Attorney General's Death Penalty Committee. *See id.* (citing USAM §§ 9- 0.040, 9-10.050, 9-10.070).[6]  Defendant seeks memoranda and supporting documentation from the USAM for this case and other cases which have been considered for death penalty certification within the past ten years.

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The purpose of the deliberative process privilege is to encourage frank discussion of legal or policy matters in writing, thereby improving agency decision-making processes. *See Sears, Roebuck & Co.*, 421 U.S. at 150-51. For the deliberative process privilege to apply, the document must be both "predecisional" and "deliberative." *See Casad v. U.S. Dep't of Heath and Human Services*, 301 F.3d 1247, 1252 (10th Cir. 2002); *Fernandez*, 231 F.3d at 1246.

The work product privilege, in contrast, protects the attorney's mental processes. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8. The Supreme Court has held that this doctrine applies to criminal, as well as civil, litigation. *United States v. Nobles*, 422 U.S. 225, 236-38 (1975). As the Supreme Court explained, "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case."

---

[6] The U.S. Attorney's Manual is available online at http://www.usdoj.gov/usao/eousa/foia_reading_room/usam.

*Id.* at 238. The attorney workproduct privilege "clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears, Roebuck & Co.*, 421 U.S. at 154. Federal Rule of Criminal Procedure 16(a)(2) recognizes the work product privilege, exempting from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2); *Fernandez*, 231 F.3d at 1247; *Edelin*, 128 F.Supp.2d at 39.

Courts addressing motions similar to the instant motion have uniformly rejected them for various reasons. *See*, *e.g.*, *United States v. Haynes*, 242 F.Supp.2d 540, 541 & n.1 (W.D. Tenn. 2003) (denying motion and citing cases that have rejected similar motions). Some courts have rejected the motion on the ground that the Department of Justice Death Penalty Protocol does not create any substantive or procedural rights for defendants and is essentially a prosecutor's charging decision. *See*, *e.g*., *Haynes*, 242 F.Supp.2d at 541; *United States v. Furrow*, 100 F.Supp.2d 1170, 1178 (C.D. Cal. 2000) (holding that defendant cannot rely on internal DOJ manual to compel production of internal prosecution documents because DOJ guidelines do not create any substantive rights); *United States v. Nguyen*, 928 F.Supp. 1525, 1544-45, 1552 (D. Kan. 1996). Numerous circuit courts have similarly held that DOJ guidelines, policies, and manuals do not create any enforceable procedural or substantive rights for criminal defendants. *See United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (listing cases from First, Second, Sixth, Ninth, and D.C. Circuits); *Fernandez*, 231 F.3d at 1246; *United States v. Myers*, 123 F.3d 350, 355-56 (6th Cir. 1997).

Other courts have denied such motions on the ground that the materials are protected by the deliberative process and work product privileges as well as Rule 16(a)(2). *See United States*

*v. Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000); *United States v. Hargrove*, 2005 WL
2122310, *6 (D. Kan. Aug. 25, 2005) (unpublished opinion) (denying request for discovery of
prosecution's  capital charging practices); *Edelin*, 128 F.Supp.2d at 39-41 (denying similar
request based on deliberative process, attorney-client, and work product privileges); *Furrow*, 100
F.Supp.2d at 1174- 75 (explaining that death penalty evaluation form and prosecution
memorandum fall within deliberative process and work product privileges); *United States v.
Frank*, 8 F.Supp.2d 253, 284 (S.D.N.Y. 1998) (denying motion to disclose materials prepared in
making decision to seek death penalty based on deliberative process privilege).

In *U.S. v. Fernandez*, 231 F.3d at 1246-47, the Ninth Circuit concluded that both the
deliberative process and work product privileges applied to the death penalty evaluation form
and prosecution memorandum. The Ninth Circuit explained that the deliberative process
privilege applied because the documents were "pre-decisional," in that the United States
Attorney submits them to the Attorney General's Death Penalty Committee before the Attorney
General makes a final decision whether to seek the death penalty, and "deliberative" in that they
contain opinions, recommendations, or advice about agency policies. *Id.* The Ninth Circuit also
reasoned that the factual and evidentiary materials were so interwoven with the deliberative
material that they were not severable. *Id.* at 1247. Finally, the *Fernandez* court determined that
the documents also fell within the work product privilege, because they are internal government
documents prepared by the United States Attorney in anticipation of litigation. *Id.* at 1247. The
Ninth Circuit thus held that the death penalty evaluation form and prosecution memorandum
were not subject to discovery. *Id.*

In sum, I find the reasoning of the Ninth Circuit in *Fernandez* and of the courts that have
rejected similar motions persuasive.  Because the death penalty procedures do not create

enforceable substantive or procedural rights for Mr. Taylor, the refusal to disclose the information is a matter of prosecutorial discretion unreviewable by the courts, and the information is protected by the deliberative process and work product privileges, as well as Rule 16(a)(2), I will deny Mr. Taylor's request to force the disclosure of information concerning the Government's decision to seek the death penalty. As one court explained: "Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty." *Frank*, 8 F.Supp.2d at 284.[7]

## Conclusion

The Court concludes that Mr. Taylor has failed meet requirements under *Armstrong* and *Bass* in his request for information relating to the Government's capital charging practices.  In the alternative, Defendant's motion is denied because correspondence and other material relevant to the Government's decision to seek the death penalty in this case constitutes privileged deliberative process and attorney work product material.

_____
UNITED STATES DISTRICT JUDGE

---

[7] This decision, of course, does not alter the Government's obligation under *Brady* to disclose evidence favorable to Mr. Taylor. Although *Brady* entitles a defendant to production of exculpatory evidence, it does not reach the prosecution's analysis of such evidence. *See Furrow*, 100 F.Supp.2d at 1178.