IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                    No. CR 07-1244 WJ

DONALD SCOTT TAYLOR and
WILLIAM J. WATSON,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS SPECIAL FINDINGS FROM THE SUPERSEDING INDICTMENT
AND
TO STRIKE THE NOTICE OF INTENT TO SEEK THE DEATH PENALTY AS TO COUNT 4**

THIS MATTER comes before the Court upon Defendant Taylor's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty as to Count 4, filed May 4, 2009 (**Doc. 267**).  In this motion, Defendant argues that the use of a firearm in and of itself cannot legally create a capital crime and a capital prosecution proceeding in this manner would violate the Fifth and Eighth Amendments.  Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied.

**Discussion**

Mr. Taylor is charged with various crimes in the Superseding Indictment: in Count 1 with Violent Crimes in Aid of Racketeering Activity (Conspiracy to Murder Jimmy S. "Bo" Chunn ), in violation of 18 U.S.C. § 1959(a)(5); in Count 2 with Violent Crimes in Aid of Racketeering Activity (Murder of Jimmy S. "Bo" Chunn), in violation of 18 U.S.C. § 1959(a)(1)

and 18 U.S.C. § 2; in Count 3 with Conspiracy to Manufacture 50 Grams and more of Methamphetamine, in violation of 21 U.S.C. § 846; in Count 4 with Using a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii),(j)(1) and 18 U.S.C. § 2;[1] in Counts 5 and 6 with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1); in Count 7 with Possession of an Unregistered Firearm, in violation of 26 U.S.C. §§ 5845(a)(2), 5861(d) and 5871; and in Count 8 with Possession of Stolen Firearms, in violation of 18 U.S.C. § 922 (j) and 924(a)(2). [Doc. 83].

The Notice of Intent to Seek the Death Penalty against Mr. Taylor identified statutory threshold findings, statutory aggravating factors, and non-statutory aggravating factors. (Doc. 105). The capital prosecution of Mr. Taylor is based on the statutorily prescribed maximum punishment of death for Counts Two and Four. In this motion, Defendant takes issue with basing a capital prosecution solely on the grounds stated in Count 4 because it stems from a violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1), which fail to properly narrow the class of offenders against whom the death penalty can be sought. Defendant also contends that by creating a capital offense based on the carrying or using of a firearm during and in relation to a crime of violence, § 924 unduly infringes on the Second Amendment right to bear arms.

**I.       Whether Capital Prosecution Based on Count 4 Violates Eighth Amendment**

Section 924(c)(1)(A)(iii) provides in part that any person who commits a crime of violence when using or carrying a firearm, if the firearm is discharged, will be sentenced to a term of imprisonment of not less than 10 years, "in addition to the punishment provided for such crime of violence." Section 924(j)(1) provides that a person who, in the course of a violation of

---

[1] 18 U.S.C. § 2 is the federal aiding and abetting statute which imposes punishment as a principal on an individual who "aids, abets, counsels, commands, induces or procures" the commission of an offense.

subsection (c), murders a person through the use of a firearm, shall "be punished by death or by imprisonment for any term of years or for life. . . ."

The Eighth Amendment to the United States Constitution requires that "death penalty statutes be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion." *California v. Brown*, 479 U.S. 538 (1987), citing *Gregg v. Georgia*, 428 U.S. 153 (1976) and *Furman v. Georgia*, 408 U.S. 238 (1972). If a state or the federal government chooses to enact a death penalty, it must "rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460 (1984).

In response to the concerns presented in *Furman* and *Gregg*, states and the federal government have adopted various narrowing factors which limit the class of offenders upon whom the sentencer is authorized to impose the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 341-342 (1992) ("Eighth Amendment jurisprudence has required those States imposing capital punishment to adopt procedural safeguards protecting against arbitrary and capricious impositions of the death sentence").

To pass constitutional muster, a capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (citing *Zant v. Stephens*, 462 U.S. 862, 877 (1983)). This narrowing may be done by the jury at either the sentencing phase of the trial or the guilt phase. *Tuilaepa v. California*, 512 U.S. 967 (1994) (the aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)(citing *Lowenfield*, 484 U.S. at 244-46). Further, the aggravating circumstance must meet two requirements: first, the

circumstance may not apply to every defendant convicted of a murder; and second, it must apply only to a subclass of defendants convicted of murder. 512 U.S. at 972.

The Federal Death Penalty Act, 18 U.S.C. § 3591 et seq. ("FDPA") channels the jury's discretion during the penalty phase to ensure that the death penalty is not arbitrarily imposed. By defining specific crimes as capital offenses (including only treason, espionage, and certain intentional killings, 18 U.S.C. § 3591), the federal death penalty regime establishes the class of persons eligible for the death penalty. The narrowing function occurs in the jury's discretion during the penalty phase of the trial. *United States v. Jones*, 132 F.3d 232, 248 (5th Cir. 1998). The FDPA requires the jury first to find that the defendant had the requisite intent. 18 U.S.C. § 3591. The FDPA further narrows the jury's discretion with the requirement that the jury find at least one statutory aggravating factor prior to considering the death penalty. *See* 18 U.S.C. § 3592(c).[2] Thus, the FDPA narrows the jury's discretion through the findings of intent and statutory aggravating factors. The use of statutory aggravating factors helps to narrow the class of death-eligible persons and thereby channels the jury's discretion as required by the Constitution. *See Lowenfield*, 484 U.S. at 244.

Defendant argues that the rarity of the use of the death penalty raises a strong presumption of arbitrariness, referring to the United States Supreme Court's opinion in *Furman*, 408 U.S. at 248 ("It is unfair to inflict unequal penalties on equally guilty parties, or on any innocent parties, regardless of what the penalty is"). Defendant contends there is a danger in arbitrarily selecting a defendant for exposure to the penalty of death without an effort to genuinely narrow the group of murderers for whom that penalty may be exacted, by the use of

---

[2] The aggravating factors for homicide are codified at 18 U.S.C. § 3592(c). 18 U.S.C. § 3592(c)(2) describes as an "aggravating factor," a "[p]revious conviction of violent felony involving firearm which is punishable by a term of imprisonment of more than one year.

rational and objective criteria.  *See McCleskey v. Kemp*, 481 U.S. 279, 305 (1987) (" . . . the State must establish rational criteria that narrow the decision-maker's judgment as to whether the circumstances of a particular defendant's case meet the threshold").

The issue here is whether the death penalty scheme is arbitrary on the basis that the use of a firearm in and of itself cannot legally create a capital crime.  Defendant argues that the section of the federal death penalty scheme, which bases a capital prosecution solely on the use of a firearm during a murder, does not meet the standard for narrowing factors required by *Furman* and *Greg*.  Defendant urges the court to follow Judge Mukasey's decision in *U.S. v. Cuff*, 38 F.Supp.2d 282 (S.D.N.Y. 1999). In *Cuff*, Judge Mukasey considered a challenge to a notice of intent to seek the death penalty that included a non-statutory aggravating factor based on the use of a firearm during the commission of the offense. *Id*., at 285-88.  Judge Mukasey struck the non-statutory aggravating factor for use of a firearm in connection with murders under the FDPA, noting that use of a firearm does not meet the requirements for an aggravating factor because "it does not make a homicide worse, whether one looks at it from standpoint of the crime, the victim or the perpetrator." 38 F. 2d at 288.

In response, the Government contends that basing a death-penalty prosecution on a violation of §§ 924(c)(1)(A)(iii) and (j)(1) is constitutional because it adequately narrows the class of offenders against whom the death penalty can be sought.  The Government further contends that *Cuff* is irrelevant to the issue to be resolved here.  The Court agrees with the Government's position.

*Cuff* is inapposite and not persuasive.  The notice of intent to seek the death penalty in *Cuff* was based on use of a firearm as a non-statutory aggravating factor. The holding in that case was not based on a narrowing argument, but a finding by the court that use of a firearm was not

"an aggravating factor in the first place." 38 F.Supp.2d at 288.[3] The court's reasoning is not applicable here because the Government is not basing its FDPA prosecution solely on use of a firearm under either § 924(c)(iii) or § 924 (j).  Nor is the Government relying on a non-statutory aggravating factor in an attempt to narrow the group of individuals to narrow the class of offenders against whom the death penalty can be sought. *See U.S. v. McCullah*, 76 F.3d 1087, 1106 (10th Cir. 1997) (statutory aggravating factor must be present for a defendant to be death-eligible, and only then do the non-statutory factors come into play).  Only after guilt is found based on a violation of § 924(j), will the jury be asked to further consider a *statutory* aggravating factor based on a previous conviction of a violent felony involving a firearm.  *See* 18 U.S.C. § 3592(c)(2); *cmp*. *McCullah*, 76 F.3d at 1107 (use of deadly weapon "may properly be used as an aggravating factor because this factor genuinely narrows the class of defendants eligible for the death penalty and aids in individualized sentencing") (citing *Arave v. Creech*, 507 U.S. 463, 473-75 (1993) and *Tuilaepa v. California*, 512 U.S. 967 (1994)). The Court agrees with the Government's assessment that use of a firearm in the context of § 924(j) is not an "aggravating factor," but an element of the offense.  Use of a firearm under 18 U.S.C. § 924(j) cannot be considered an aggravating factor, because a finding of guilt under § 924(j)(1) renders a defendant only subject to a possible sentence of the death penalty[4] subject to *either* "death or by imprisonment for any term of years or for life. . . . ."  Moreover, any narrowing effected by the language in § 924 in the guilt phase is constitutionally permissible. *See U.S. v. McCullah*, 76

---

[3] The court in *Cuff* noted that the Government's position was that relying on use of a firearm as a non-statutory aggravating factor sufficiently narrowed the class of defendants subject to the death penalty.  However, the court found that the argument did "not go far enough." 38 F.Supp.2d 288.

[4] 18 U.S.C. § 924(j) provides that "A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall– (1) if the killing is a murder. . . , be punished by death or by imprisonment for any term of years or for life. . . ."

F.3d at 1109 (narrowing function may be performed by jury findings at either the sentencing phase of the trial or the guilt phase) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 244-45 (1988)).

The above distinctions between *Cuff* and the instant case render *Cuff* unpersuasive. A final reason not to follow *Cuff* is the fact that it is not precedent for this Court. In addition, Defendant cites to several other cases, two of which are more recent cases from the Southern District of New York, which held contrary to the court's conclusion in *Cuff*. In *U.S. v. Williams*, (unpubl. opin.), 2004 WL 2980027 (S.D.N.Y.,2004), the court favored the reasoning in *Cuff* and struck the non-statutory firearms factor as an aggravating factor. However, the court came to a different conclusion regarding the alleged firearms violations based on § 924(j). Defendants in that case argued that "if it is irrational to utilize possession of a firearm as an aggravating factor, it is equally (if not more) irrational to create an offense based on the same premise." At *19. The court rejected that argument, finding that the logic relied on by *Cuff* "does not apply to elements of the underlying capital offense because there is no constitutional requirement that those elements 'aggravate' the crime." *Id*. A later decision from the Southern District of New York also rejected the *Cuff* logic when applied to the aggravating factors relating to § 924, for the same reasons. *See*, *U.S. v. Barnes*, 532 F.Supp.2d 625 (S.D.N.Y. 2008).

The Government points to a District of Kansas case which I find to be persuasive. In *U.S. v. Nguyen*, 928 F.Supp. 1525 (D.Kan.,1996), the court rejected defendant's argument for exactly same reasons as this court rejects Defendant's argument in this case. The defendant in *Nguyen* argued that §924(c) qualifies as a "built-in aggravating circumstance" and as such, fails the constitutional "narrowing" requirement under *Zant*. Defendant argued that there was nothing about the nature of firearms or the way that they inflict death that justified singling out firearm murders for the death penalty. The Government responded (as it does here) that use of a

firearm in the § 924 provisions is not a statutory aggravating factor. Rather, the statutory aggravating factors are codified at 18 U.S.C. § 3592(c).  Before the death penalty may be imposed, a jury must not only convict under the relevant § 924 provision, but in addition, must find the presence of at least one of the listed statutory aggravating factors.  The court in *Nguyen* noted that there was "nothing in the statute itself indicating that Congress intended use of a firearm to be an aggravating factor in § 924(i)(1). Rather, the statute simply states one death-eligible form of murder." *Id*. at 1533 (further noting that "an aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both)" (citing *Tuilaepa v. California*, 512 U.S. 967, ----, 114 S.Ct. 2630, 2635 (1994). The court further reasoned:

> Even if the court were to accept [defendant's] argument (which it does not) that the use of a firearm constitutes a "built-in aggravating factor," this does not appear to run afoul of the Constitution. The purpose of aggravating factors-to narrow the class of death-eligible persons-may be accomplished at the guilt, as well as the sentencing, phase of trial. *Lowenfield v. Phelps*, 484 U.S. 231, 244-45 (1988). Even if Congress' purpose was to narrow death-eligible murders to those committed with firearms, the court perceives no reason why this purpose is constitutionally infirm, nor has [defendant] cited any authority suggesting that it would be.

928 F.Supp. at 1533.

For the above reasons, I will deny Defendant's request to strike the Notice of Intent to seek the death penalty as to Count 4.

## II.     Whether Capital Prosecution Based on Count 4 Violates Second Amendment

Defendant asserts that the Second Amendment bars seeking the death penalty based on § 924, relying on the United States Supreme Court's decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008).  In that case, the Supreme Court held that the Second Amendment conferred an individual right to keep and bear arms. *Id.* at 2813.  Defendant's position on this

issue holds no weight.

First, Defendant fails to make a connection between the *Heller* holding and § 924(c)(1)(A)(iii) or (j)(1), which creates consequences for certain criminal uses for those arms. *Heller* considered the constitutionality of a statute that prohibited all possession of handguns by the public. *Id*. at 2788. The *Heller* court, however, stated that it did "not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation." *Id.* at 2799 (emphasis in original). The constitutionality of the firearm statutes have been upheld in cases following the Supreme Court's decision in *Heller*. *See*, *e.g.*, *U.S. v. Jackson*, 555 F.3d 635, 636 (7th Cir. 2009) ("The Constitution does not give anyone the right to be armed while committing a felony, or even to have guns in the next room for emergency use should suppliers, customers, or the police threaten a dealer's stash."); *United States v. Ross*, 2009 WL 1111544, p. 2 (3d Cir. 2009) (not selected for publication) ("Nothing in Heller supports Ross's challenge to the constitutionality of a statute criminalizing the possession of a machine gun."); *United States v. Frazier*, 2008 WL 4949153, p. 5 (6th Cir. 2008) (not selected for publication) ("[N]othing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." (quoting *Heller*, 128 S.Ct. At 2816-17)).

Further, and more to the point, at least one district court has upheld the constitutionality of § 924(c) and § 924(j) in the context of a capital prosecution following the decision in *Heller*. *See United States v. Williams,* (unpubl. opin.) 2008 WL 4644830, p. 9 (C.D.Ca. 2008) ("The Second Amendment right to bear arms, as decided by the recent Supreme Court case *Heller v. United States*, does not make 18 U.S.C. §§ 924(c), (j) unconstitutional because §§ 924(c) and (j) constitute reasonable limitations on Defendant's Second Amendment rights.").

Accordingly, the Court rejects Defendant's argument that the Second Amendment bars

seeking the death penalty based on § 924.

## Conclusion

In sum, the Court denies Defendant's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty as to Count 4, filed May 4, 2009 **(Doc. 267)** on both of the grounds raised in the motion.  The Court rejects Defendant's contention that 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1) cannot be used as a basis for prosecution under the FDPA because the provisions fail to properly narrow the class of offenders against whom the death penalty can be sought.  The Court also rejects Defendant's argument that § 924 unduly infringes on the Second Amendment right to bear arms.

**THEREFORE,**

**IT IS ORDERED** that Defendant Taylor's Motion to Dismiss the "Special Findings" from the Superseding Indictment, and to Strike the Notice of Intent to Seek the Death Penalty as to Count 4 **(Doc. 267)** is DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE